James A. **FASSINGER,** Appellant–
Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 64A04–9503–CR–107.

Court of Appeals of Indiana.

Oct. 23, 1995.

Garrett V. Conover, Conover & Conover, Chesterton, for appellant.

Pamela Carter, Attorney General, David A. Arthur, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, James Fassinger ("Fassinger"), appeals from the denial of his motion to dismiss. We affirm.

### Issue

The question presented to us is whether Article 1 § 14 of the Indiana Constitution and/or the 5th Amendment to the U.S. Constitution bar criminal prosecution under I.C. 35–48–4–10 when a tax liability under I.C. 6–7–3 has been assessed and partially paid.

### Facts and Procedural History

Fassinger was charged by Information with three counts of Delivery of Marijuana, class D felonies. Before trial, Fassinger filed a motion to dismiss, contending further criminal prosecution was barred on double jeopardy grounds under Article 1 § 14 of the Indiana Constitution and the 5th Amendment of the U.S. Constitution. Fassinger claimed the Indiana Department of State Revenue ("Dept. of Revenue"), acting under the Controlled Substances Excise Tax ("CSET"), had assessed and he had partially paid, the tax imposed on the controlled substances referenced in the criminal information filed against him. The trial court denied his motion to dismiss the Delivery of Marijuana charges, and certified his question for interlocutory appeal.

### Discussion and Decision

The issue before us today is whether double jeopardy bars criminal conviction for possession of the controlled substance when a defendant has voluntarily agreed to pay the tax assessed against him under the CSET. We confine our analysis to the specific facts before us today. Fassinger argues that prosecution for Delivery of Marijuana violates concepts of double jeopardy because he agreed to pay the tax assessed under the CSET. It is Fassinger's position that the assessment constituted a first jeopardy for purposes of double jeopardy. Our Tax Court held that the CSET was a "punishment" for purposes of double jeopardy, and therefore,

CSET could not be collected unless it was imposed during the first prosecution of the person in possession. *Clifft v. Indiana Dept. of State Revenue* (1994), Ind.Tax, 641 N.E.2d 682, *trans. granted* (*see also Hall v. Indiana Dept. of State Revenue* (1994), Ind.Tax, 641 N.E.2d 694, *trans. granted; Bailey v. Indiana Dept. of State Revenue* (1994), Ind. Tax, 641 N.E.2d 695, *trans. granted; Hayse v. Indiana Dept. of State Revenue* (1994), Ind.Tax, 641 N.E.2d 698, *trans. granted* ).[1] The Indiana Tax Court arrived at this determination in comparing the CSET to a similar statute examined by the U.S. Supreme Court in *Department of Rev. v. Kurth Ranch* (1994), — U.S. —, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767.

The threshold issue is the determination of when jeopardy first attached in Fassinger's tax case, because without a first jeopardy, there can be no second. In *Kurth Ranch*, the first time the U.S. Supreme Court held a tax statute was subject to double jeopardy analysis, no guidance was provided to determine when jeopardy attaches in a tax case. As our Tax Court noted in *Clifft*, however, the date of assessment is not controlling. In both *Kurth Ranch* and *Clifft*, the chronology of relevant official actions was: (1) arrest; (2) assessment; (3) guilty plea on the underlying possession charge with all, or virtually all, tax liability still outstanding. There has been no guilty plea or conviction on Fassinger's underlying drug charges, nor has Fassinger been criminally charged with failure to pay the CSET. The chronology of relevant official actions in Fassinger's situation is: (1) arrest; (2) assessment; (3) voluntary partial or token payment towards assessment, with most of the tax liability still outstanding. The facts presented by Fassinger were not applied in *Clifft* or in *Kurth Ranch*. Our Tax Court was careful to note, "This appeal, like *Kurth Ranch*, 'does not raise the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character.' *Kurth Ranch*, 114 S.Ct. at 1947, n. 21 (Scalia, J. dissenting)."

Such are the facts as presented by Fassinger today.

Fassinger argues that assessment of the tax alone triggers a jeopardy attachment. The relevant case law cannot be applied directly to Fassinger's situation because the facts differ significantly. The cases relied upon by Fassinger, with the exception of *Clifft*, contain facts wherein the defendants have failed to pay the CSET and they have been charged with failure to pay CSET, a class D felony. I.C. 6–7–3–11(b). In *Whitt v. State* (1995), Ind.App., 645 N.E.2d 677, *trans. granted*, and *Charley v. State* (1995), Ind.App., 651 N.E.2d 300, the defendants failed to pay the CSET and were prosecuted for failure to pay contemporaneously to being prosecuted for the possession offense. We held that double jeopardy was thus not violated. However, under similar facts in *Collins v. State* (1995), Ind.App., 645 N.E.2d 1089,[2] we held that double jeopardy was violated with the contemporaneous prosecution of failure to pay CSET and possession of cocaine. The holdings in these cases are inconsistent.

The U.S. Supreme Court held in *Kurth Ranch* that Montana's Dangerous Drug Tax (DDT) was "a second punishment within the contemplation of [the Fifth Amendment]...." *Id.* The plaintiffs in *Kurth* and *Clifft* pleaded guilty to the controlled substances crimes *before* any challenge to the tax assessment occurred. It was held in *Kurth Ranch* that Montana could collect the tax either contemporaneous with, or in lieu of, the criminal punishment. *Id.*, 114 S.Ct. at 1945. The tax in *Kurth Ranch* was unconstitutional as applied to the Kurths only because it was a second punishment, and not contemporaneously imposed. *Id.*, 114 S.Ct. at 1948. We subsequently held in *Anderson v. State* (1995), Ind.App., 649 N.E.2d 1060, that:

> [t]he general assembly meant the CSET and underlying drug offenses to work independently. This is evidenced in several

---

**1.** On March 9, 1995, our supreme court granted transfer of *Clifft*. The Court heard argument on March 1, 1995, before granting the petition to transfer. A decision is forthcoming. Transfer was also granted on *Hall, Bailey,* and *Hayse*. Decisions are forthcoming.

**2.** Our supreme court accepted transfer of this case on March 31, 1995. An opinion is forthcoming.

provisions of the act. First, an arrest or criminal conviction is not needed for the tax to become due. *I.C. § 6–7–3–8; Clifft, supra.* Second, the tax raises revenue for drug abuse prevention programs. I.C. § 6–7–3–16. Third, paying the tax does not confer immunity from criminal prosecution. *I.C. § 6–7–3–7.* Forth, safeguards protect the identity of the payor and ensure that information gained from payment does not lead to a criminal prosecution. *I.C. § 6–7–3–8, –9.*

We, therefore, conclude the legislature intended to impose the tax in addition to the punishment for the underlying drug offense. It follows, then, that the State can prosecute for failure to pay the tax without foregoing contemporaneous prosecution for the underlying offense. We construe statutes to prevent absurdity and to give effect to the legislature's probable intent. *Baker v. State* (1985), Ind.App., 483 N.E.2d 772, 774, *trans. denied.* The legislature did not intend the State to chose between enforcing the CSET or the criminal drug laws. If this were so, enforcing the CSET would reduce the sanction for some drug offenders. This is an absurd construction of legislative intent as, whatever else might be said about it, the CSET is clearly not meant to reduce the penalty for drug crimes. Thus, contemporaneous punishment for failing to pay the CSET and the underlying drug offense does not violate double jeopardy. *See Clifft, supra; Kurth Ranch, supra.*

*Id.* at 1063; *see also Whitt,* 645 N.E.2d 677; *Charley,* 651 N.E.2d 300).

■ The question becomes, then, whether an unchallenged assessment constitutes a punishment for the purpose of determining that the first jeopardy has attached in a double jeopardy analysis.[3] Fassinger has made payments toward the tax due and has failed to protest the imposition of the CSET. Fassinger is entitled to the full protection of due process regarding the assessment. He is entitled to either not pay the tax and suffer criminal penalty, or to seek injunctive relief from the tax imposed. *Clifft,* 641 N.E.2d at 691. He chose instead to volun-

tarily partially comply with the tax assessment. He has committed no crime with regard to the CSET. To that extent, he has not been subjected criminally as a result of the CSET. Because he has chosen to pay the tax, he can assert that defense in the event he were to be charged criminally under the CSET. *See, e.g., Collins,* 645 N.E.2d at 1094. The Dept. of Revenue has made no attempt to collect the assessed tax, beyond accepting Fassinger's voluntary payments toward the assessment. To that extent, there has been no first jeopardy.

■ In order for first jeopardy to attach, Fassinger must have suffered a punishment in the truest sense. The State, relying on *Malone v. State* (1913), 179 Ind. 184, 100 N.E. 567, argues that because a *de novo* review of the assessment is available, jeopardy has not attached. Indeed, any review by the Indiana tax court is *de novo.* I.C. § 6–8.1–9–1(d). While it is true that Fassinger failed to protest the assessment under Indiana Code § 6–8.1–5, he is not without the opportunity to seek *de novo* review in the Tax Court. His choice not to protest the assessment does not render the fact that an assessment has been issued a "jeopardy" for double jeopardy purposes. Rather, not until the challenge to the validity of the assessment has been rejected does the first jeopardy attach. Fassinger has suffered no punishment as a result of the assessment until he loses the opportunity to be refunded or the opportunity to escape liability via a tax protest.

In other words, "collection" for purposes of jeopardy attachment has not commenced until its challenge has been denied. Voluntary compliance with the CSET does not trigger jeopardy. Such a rule would lead to the absurd result that a criminal defendant can choose his penalty. It is unlikely the legislature intended for such a result. The CSET may be viewed as a lesser penalty, as compared to the prospect of a lengthy prison term. While we agree that the ideal approach is to assess the CSET and the criminal charge in the same proceeding, unless a

3. The first jeopardy must actually attach, whereas the second jeopardy must only be imminent to justify dismissal on the grounds of double jeopar-

dy. That a first jeopardy might attach is not sufficient to warrant dismissal on grounds of double jeopardy.

person assessed under the CSET fails to pay, such cannot be accomplished because the CSET is not a criminal charge, applicable in criminal court contemporaneous with the underlying drug charge. Conceivably, no defendant who had voluntarily complied with the CSET would face criminal punishment for the drug charge.

Another alternative for Fassinger to obtain attachment of the first jeopardy is to pay the tax in the full amount and file a claim for refund from the Dept. of Revenue under I.C. § 6–8.1–9–1(a). Any denial of the claim for refund would be subject to the *de novo* review of the Tax Court. As of yet, Fassinger has not made significant payment toward the assessment and is in no position to file a claim for refund. Should he pay the assessed tax, he will have three years from the payment of the entire tax liability within which to file an original tax appeal in the Tax Court.

 Jeopardy does not attach when review *de novo* is available. This follows the more commonly known rules as to when jeopardy attaches—when the jury is sworn in a jury trial, *Livingston v. State* (1989), Ind., 544 N.E.2d 1364, when the first witness is sworn in a bench trial, *Burton v. State* (1987), Ind.App., 510 N.E.2d 228, *reh. denied, trans. denied,* or when a plea of guilty is accepted by the court, *State v. Keith* (1985), Ind.App., 482 N.E.2d 751, *reh. denied.* An assessment follows none of those events; the review *de novo* in the Tax Court will follow receipt of evidence. Collection by instituting an action in court under I.C. § 6–8.1–8–4 will likewise involve the receipt in court of evidence of the liability and of the failure to satisfy the tax obligation. Until and unless there is either a denial of an original tax appeal or a denial of a claim for refund from the Tax Court, there is no jeopardy resulting from the duty to pay the tax.

 Thus, jeopardy does not attach in a tax case until a party's tax protest has been rejected by the Tax Court or the request for

a tax refund has been similarly denied by the Tax Court. While we agree with our Tax Court that an assessment under the CSET is punitive, the jeopardy resulting from that assessment does not attach until the party has lost official recourse. Unless the defendant protests the tax assessment via an original tax appeal, or until the tax has been paid and a claim for refund has been denied by the tax court, no jeopardy has occurred. Even in cases of forfeiture, where an individual's property has been physically confiscated, or there is a threat of physical confiscation, a judicial claim must be filed and judgment on the claim must be entered in order for jeopardy to attach. *See, e.g., U.S. v. Ursery* (6th Cir.1995), 59 F.3d 568 (Jeopardy attaches in a nontrial forfeiture proceeding when the court accepts the stipulation of forfeiture and enters the judgment of forfeiture); *U.S. v. Tamez* (E.D.Wash.1995), 881 F.Supp. 460 (Jeopardy attached to stipulated civil forfeiture when court entered the decree of forfeiture).

Additionally, Fassinger was not convicted criminally on the drug charge, unlike the defendant in *Clifft,* who appealed the Dept. of Revenue's tax levy because she had already pleaded guilty to the drug charge. The first jeopardy in *Clifft* was the guilty plea on the underlying drug charge. Unlike the situation in *Clifft,* there has been no first jeopardy for Fassinger.

Conceivably, if the outcome of this case were to go the way Fassinger would have it, he could suffer no criminal or tax repercussions whatsoever, based solely on principles of double jeopardy. In a "Catch–22" maneuver, Fassinger applies principles of double jeopardy when there has been no first jeopardy, let alone a second jeopardy. He could be found innocent of the criminal charges against him, thereby eliminating any *Clifft*-type argument of double jeopardy against future collection of the tax assessment (CSET does not require criminal arrest or conviction).[4] Or, if we reverse the denial of

---

4. Our tax court held in *Clifft:*

> The CSET, however, is a punishment for double jeopardy purposes. Therefore, the Department may not collect the tax from Mrs. Clifft, who has already pled guilty to Class A misdemeanor possession. On the other hand,

> because jeopardy has not attached in any criminal action against Mr. Clifft, double jeopardy does not bar collection of the tax from him. *Clifft,* 641 N.E.2d at 691–692. In other words, until there is a collection or a conviction, no jeopardy has attached.

his motion to dismiss, Fassinger would suffer no criminal punishment on the drug charge and he could later protest his tax assessment or file a claim for refund and prevail, thereby eliminating all punishment. Likewise, he could be convicted of the criminal drug offense and escape liability for the assessment via a tax protest because there was a first jeopardy in the criminal conviction.

■ In any event, Fassinger's failure to challenge the assessment is, in essence, a waiver of the opportunity to claim the assessment as a jeopardy. The U.S. Supreme Court held that double jeopardy is a personal constitutional right that can be waived. *U.S. v. Broce* (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927. Because Fassinger at his own choosing did not file a claim or respond to the assessment, payment of the tax does not mean jeopardy has attached. In *United States v. Torres* (7th Cir.1994), 28 F.3d 1463, *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603, Renato Torres attempted to have the administrative forfeiture of the $60,-000 seized from him on the date of his arrest adjudicated as a prior jeopardy barring his criminal conviction and imprisonment. As in this case, Torres received notice but chose not to make a claim in the civil forfeiture proceeding. The Seventh Circuit held that because Torres was a non-party, he was not at risk of a determination of guilt in the forfeiture proceeding and therefore, jeopardy did not attach. *Id.* at 1465.

The Seventh Circuit also found that *Kurth Ranch* was inapplicable because Torres' failure to make a claim in the forfeiture proceedings meant he did not own or have any interest in the currency. Similarly, there was time for Fassinger to have refuted the CSET. As a result, he was not placed in jeopardy nor "punished" in a constitutional sense. It does not offend constitutional principles to find that failure to file a claim [for refund] or to respond to a CSET is an effective waiver to a subsequent double jeopardy challenge. To hold otherwise, would allow criminal defendants to choose their punishment. A criminal defendant could decide to monetarily pay the assessment in lieu of going to prison. We doubt the legislature intended to substitute excise taxing for criminal punishment.

We remand back for trial.

DARDEN, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

This is a dissent from the rationale relied upon by the Majority. In this appeal, the rationale vehicle is more important than the resultant destination. I agree with the result but disagree with the rationale to achieve it. Under the Majority's rationale, jeopardy will attach in a tax case when a party's tax protest is rejected by the tax court or when a request for refund is denied. Maj. at 1167. However, I would conclude that assessment of a civil sanction should not prohibit subsequent criminal prosecution for two reasons:

1. IND.CODE § 6-7-3-9 (1993) specifically states that payment of the Controlled Substance Excise Tax does not make the buyer immune from criminal prosecution.

2. The Indiana Controlled Substance Excise Tax is not punishment for double jeopardy purposes.

The facts presented by Fassinger's appeal are not unique. This court recently decided a case in which Indiana's Controlled Substance Excise Tax (CSET) was fully paid by the defendant before the inception of criminal prosecution. *Coulbern v. State* (1995), Ind.App., 655 N.E.2d 1254. The *Coulbern* majority concluded that jeopardy assessment and collection of the CSET prohibited subsequent prosecution. *Coulbern,* at 1255. I dissented in *Coulbern* for the same reasons I dissent in this appeal.

First, the Indiana legislature clearly intended to impose the CSET civil sanction in addition to the criminal drug offense punishment. The act specifically states that payment of the CSET does not make the buyer immune from criminal prosecution. IC 6-7-3-9. Furthermore, several of the accompanying provisions support this intention. *See, e.g.,* IC 6-7-3-7 to -9.

When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura* (1984),

Ind.App., 465 N.E.2d 215, 218, *trans. denied.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Not only does the act clearly validate subsequent criminal prosecution after payment of the tax, but the accompanying provisions support this determination. One provision provides that an arrest or criminal conviction is not needed for the tax to become due. IC 6–7–3–8. A second provision reveals one is not relieved of the duty to pay the tax even if the person delivers a controlled substance to a law enforcement officer. IC 6–7–3–7. Two additional provisions provide safeguards which protect the identity of the payor and ensure that information gained from payment does not lead to criminal prosecution. IC 6–7–3–8, –9.

These provisions illustrate that the legislature clearly meant for the CSET and underlying drug offenses to work independently. We must construe statutes to prevent absurdity and to give effect to the legislature's probable intent. *Anderson v. State* (1995), Ind.App., 649 N.E.2d 1060, 1063. The legislature did not intend the State to choose between enforcing the CSET or the criminal drug laws. Moreover, the legislature could not have intended that by paying the tax assessment the defendant would be insulated from a prison sentence. This would be an absurd construction of legislative intent as the CSET is clearly not meant to reduce the penalty for drug crimes. *Id.*

Next, we must determine whether or not such a statute is constitutional. Our law is clear that once a statute is declared to be unconstitutional, it is to be regarded as if it had never been enacted. *R.L.G. v. T.L.E.* (1983), Ind.App., 454 N.E.2d 1268, 1271. However, every enactment of our General Assembly stands before the court cloaked with a presumption of constitutionality. *Eddy v. McGinnis* (1988), Ind., 523 N.E.2d 737, 738. The Fifth Amendment of the United States Constitution [5] and art. I, § 14 of the Indiana Constitution [6] prohibit a person

from being put in jeopardy twice for the same offense. The Indiana Supreme Court has stated that the history of the Indiana Constitution does not reveal any intent to apply provisions against double jeopardy outside the context of criminal prosecutions. *Eddy, supra,* at 739. The court explained:

The documented history of the Indiana double jeopardy clause reveals that its purpose is the regulation of criminal proceedings. Our constitutional prohibition against double jeopardy originated in the Indiana Constitution of 1816, which provided '[t]hat in all criminal prosecutions, the accused ... shall not be ... twice put in jeopardy for the same offence[sic].' Ind. Const. of 1816 art. I, § 13. This provision was included in the Indiana Constitution of 1851 upon the recommendation of the committee on the rights and privileges of the inhabitants of the State. Sections four, five, six and seven of Report No. 20 became sections 13, 14, 15 and 17 of Article I of the 1851 Constitution, *Convention Journal 1850,* 187 (1936). Covering such matters as double jeopardy, self-incrimination and bail, these provisions were treated by the convention as 'sections, referring to the manner in which criminals shall be tried.' 2 *Debates of the Indiana Convention* 1389 (1935).

*Id.* at 739–40. Thus, a historical analysis of Indiana's Constitution supports my position that double jeopardy should not be invoked when there is a civil sanction and a criminal prosecution.

Moreover, Indiana courts have routinely not invoked double jeopardy where the defendant is convicted of a failure to pay the CSET contemporaneous with a conviction for an underlying drug offense. *Charley v. State* (1995), Ind.App., 651 N.E.2d 300, 304; *Anderson v. State, supra,* at 1062; *Whitt v. State* (1995), Ind.App., 645 N.E.2d 677, 679, *trans. pending; Clifft v. Indiana Dept. of State Revenue* (1994), Ind.Tax, 641 N.E.2d 682, 693, *trans. pending; Hall v. Indiana Dept. of State Revenue* (1994), Ind.Tax, 641

---

**5.** The Fifth Amendment provides "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

**6.** The Indiana Constitution states "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14.

N.E.2d 694, 695, *trans. pending; Bailey v. Indiana Dept. of State Revenue* (1994), Ind. Tax, 641 N.E.2d 695, 698, *trans. pending; Hayse v. Indiana Dept. of State Revenue* (1994), Ind.Tax, 641 N.E.2d 698, 699, *trans. pending.*[7] Thus, collection of the CSET must be imposed during the first prosecution or not at all. *Id.*

The facts presented in Fassinger's appeal are distinguishable from the facts presented in the above cases because the civil penalty (the CSET) was assessed and partially paid *prior to* the inception of criminal prosecution. The sequence of the sanctions should not be the dispositive issue in determining whether or not double jeopardy attached. I believe it defies logic to determine that the tax is valid when it is imposed contemporaneously with the criminal charges, but invalid when it is imposed prior or subsequent to criminal prosecution. The sequence of punishment should not be the key element in determining whether there is double jeopardy. Instead, I would conclude that because double jeopardy does not attach when a defendant is contemporaneously taxed and criminally charged, it should not attach when the tax is imposed prior or subsequent to criminal prosecution.[8]

The U.S. Supreme Court has held that Congress may impose both a criminal and a civil sanction in respect to the same act or omission; the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938). Fassinger argues that assessment of the CSET was punishment and that

to criminally prosecute him after partial payment of the tax would amount to successive punishment, a violation of double jeopardy.[9] I disagree.[10]

The Indiana cases rely on the U.S. Supreme Court's majority decision in *Kurth Ranch,* in which the Court held that a tax imposed under Montana's Dangerous Drug Act was punishment for the purpose of double jeopardy analysis. *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. ——, ——, 114 S.Ct. 1937, 1948, 128 L.Ed.2d 767 (5–4 decision). The Majority admits that prior to that decision, the U.S. Supreme Court has never found that a tax violated the Double Jeopardy Clause. *Id.,* 114 S.Ct. at 1945–46. Whereas fines, penalties, and forfeitures are readily characterized as sanctions, taxes are typically different because they are usually motivated by revenue-raising rather than punitive purposes.[11] *Id.,* 114 S.Ct. at 1946. For the reasons stated below, I believe Indiana's CSET is remedial and thus distinguishable from the tax at issue in *Kurth Ranch.*

The *Kurth Ranch* Court points to several features of the Montana tax which set it apart from most taxes. Under the Montana tax, the taxpayer has no obligation to pay any tax unless and until he is arrested. *Id.,* 114 S.Ct. at 1942. Moreover, it is strictly a property tax on possession of goods that no longer exist and that the taxpayer never lawfully possessed. This has an unmistakable punitive character for double jeopardy purposes. *Id.,* 114 S.Ct. at 1948. The high rate of taxation and obvious deterrent pur-

---

**7.** *But see Collins v. State* (1995), Ind.App., 645 N.E.2d 1089, 1095–96, *trans. pending* (the offense of failure to pay the substance excise tax on cocaine was an "included offense" of dealing in cocaine so that conviction and sentencing for both violated double jeopardy).

**8.** In order to make this finding consistent, the Indiana Supreme Court would need to overturn *Collins, supra. But see Charley, supra,* at 304–05, the court found that possession of cocaine within 1,000 feet of school property is not a lesser included offense of failure to pay the CSET.

**9.** Fassinger cites the Indiana Tax Court's holding in *Clifft, supra,* to support this contention. As the Majority notes, the tax court, as well as the *Kurth Ranch* Court, specifically refused to address the question of whether an ostensibly civil

proceeding designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character. *Clifft, supra,* at 693, n. 16, *Kurth Ranch, infra,* at 1947, n. 21.

**10.** In so doing, I expressly reject the contrary conclusion of the Indiana Tax Court in *Clifft, supra.*

**11.** *See Katner v. State* (1995), Ind., 655 N.E.2d 345. The Indiana Supreme Court recently determined that forfeiture actions have characteristics of both civil and criminal actions; however, forfeiture is properly classified as civil in nature. *Id.,* at 347. Because of its significant and potentially severe punitive function, one might assume that a forfeiture action is criminal in nature. Forfeiture is, however, actually a civil action. *Id.*

pose were factors consistent with the punitive character of the tax. *Id.,* 114 S.Ct. at 1946.

Indiana's CSET is substantially different. As noted above, the Montana taxpayer has no obligation to pay any tax until he is arrested. *Id.,* 114 S.Ct. at 1942. In Indiana, the tax is due when a person receives delivery of, takes possession of, or manufactures a controlled substance in violation of state or federal law. IC 6–7–3–8. However, an arrest or criminal conviction is not necessary. On the contrary, there are specific safeguards in place to ensure that information gained from payment will not lead to a criminal prosecution. IC 6–7–3–8, –9. The identity of the payor may not be revealed at the time of payment and confidential information received by the department cannot be used to initiate criminal prosecution. *Id.*

Next, the Indiana CSET differs from the Montana tax because the CSET is an excise tax imposed on the commission of an act, not on the property itself. On the other hand, the Montana tax is a property tax. *See Kurth Ranch, supra,* 114 S.Ct. at 1948. "Excise tax" is defined as:

A tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.... A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity, or a tax on the transfer of property.

*Black's Law Dictionary* 563 (6th ed. 1990). Therefore, the CSET is distinguishable from Montana's tax which requires the crime of possession of an illegal substance. *Kurth Ranch, supra,* 114 S.Ct. at 1941–42.

Finally, neither a high rate of taxation nor an obvious deterrent purpose automatically marks the tax a form of punishment. *Id.,* 114 S.Ct. at 1946. Montana's tax was remarkably high—the assessment was more than eight times the drug's market value. *Id.* While it is true that Indiana's tax rate is high,[12] this factor is not dispositive. Such a tax may be remedial in character and therefore not punishment for double jeopardy purposes, so long as it reimburses the government for its actual costs arising from the defendant's criminal conduct. *Id.,* 114 S.Ct. at 1945.

However, it is most difficult to determine an amount that would sufficiently remedy the government. In fact, the U.S. Supreme Court has acknowledged that the precise amount of the government's damages and costs may be difficult, if not impossible, to ascertain. *U.S. v. Halper* (1989), 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487. The rate of the tax is the legislature's estimation of a fair tax burden placed on an industry that is otherwise not taxed.[13] No taxes or fees are collected from those engaged in the illegal drug business. Thus, an entire business goes without taxation. The legislature likely decided these rates were appropriate because the illegal drug business is a large, untaxed private industry, which the state is unable to tax efficiently. Therefore, it is reasonable to conclude that the legislature imposed the CSET for the legitimate purpose of raising revenue from the very profitable underground drug business.

Because payment of the CSET does not make the payor immune from criminal prosecution, and because the CSET is not punishment for double jeopardy purposes, I would affirm the trial court's decision denying Fassinger's motion to dismiss.

**12.** The amount of Indiana's controlled substance excise tax is ten dollars ($10) for each gram of a schedule V controlled substance, twenty dollars ($20) for each gram of a schedule IV controlled substance, and forty dollars ($40) for each gram of a schedule I, II, or III controlled substance. IC 6–7–3–6. The court in *Clifft* argues that Indiana's tax is considerably higher than Montana's tax on marijuana. *Clifft, supra,* at 692, n. 15. However, the court fails to take into consideration the rates imposed on controlled substances within other schedules.

**13.** The monies collected under Indiana's CSET are distributed as follows: to local law enforcement agencies to conduct criminal investigations and train law enforcement personnel; to a fund to pay for costs and administration of the CSET; to people as awards for information leading to the collection of a tax liability; and to the state drug free communities fund. IC 6–7–3–16.